## THE SALT SPRINGS NATIONAL BANK OF SYRACUSE, RESPONDENT, v. GEORGE B. SLOAN, APPELLANT.

*Bond conditioned for the exercise of diligence on the part of the obligee in collecting the debt guaranteed thereby — the exercise of diligence must be shown.*

An action was brought upon a bond conditioned "that if the above-bounden George B. Sloan shall, within one year from the date hereof, pay the said, The Salt Springs National Bank of Syracuse, any deficiency up to the said sum of $5,000, remaining unpaid to said bank on said drafts, and which the said, The Salt Springs National Bank of Syracuse, after due diligence, shall fail to collect within the time above limited," then this obligation shall be void. The complaint contained no allegation of the performance by the bank of the conditions mentioned in the bond, or that it had exercised any diligence in respect to the collection of the debts held by it.

*Held,* that the surety, the obligor upon the bond, was entitled to have the exact terms of the bond complied with before he was called upon, under the terms of the bond, to fulfill the obligation thereby entered into by him, and that judgment was improperly given against him thereon.

APPEAL by the defendant George B. Sloan from a judgment of the Supreme Court, entered in the office of the clerk of the county of Onondaga on the 22d day of October, 1889, in favor of the plaintiff, after a trial before the court and a jury at the Onondaga Circuit, at which a verdict was rendered in favor of the plaintiff. by direction of the court, for the sum of $5,501.67.

The action was brought to recover upon a bond executed by the defendant and delivered to the plaintiff.

In the fall of 1886 the firm of W. J. Austen & Co., who were doing business in the city of Oswego, drew several drafts on Baker & Clark, then doing business in the city of New York, which drafts were accepted and thereafter discounted by the plaintiff. Baker & Clark made an assignment for the benefit of their creditors to one Clarence F. Birdseye, of New York city, before any of said drafts came due and payable, and they preferred the plaintiff in class B in "the sum of about $7,000, owing to said bank, for the amount due upon certain drafts by said William J. Austen & Co., upon and accepted by said Baker & Clark, and by said bank discounted for said Baker & Clark." On the 19th day of February, 1887, the bank held the aforesaid drafts (the same being wholly unpaid), and

on that day the defendant executed and delivered to the plaintiff his bond in the penal sum of $5,000, which bond, after reciting the aforesaid drafts and the making of the assignment as aforesaid, contained the following condition : " Now, therefore, the condition of this obligation is such that if the above bounden George B. Sloan shall, within one year from the date hereof, pay the said The Salt Springs National Bank of Syracuse, any deficiency up to the said sum of $5,000 remaining unpaid to said bank on said drafts, and which the said, The Salt Springs National Bank of Syracuse, after due diligence, shall fail to collect within the time above limited, from the said Baker & Clark, or either of them, or from the said Clarence F. Birdseye, as assignee as aforesaid or otherwise, then this obligation to become void, otherwise to remain in full force and virtue." Upon receiving said bond the bank executed a receipt acknowledging the delivery of the bond, and in the receipt stated that it had received the bond upon the following terms and conditions, and the terms and conditions in said bond set out, to wit : " Said bank shall use due diligence to collect the six drafts named in said bond from Clarence F. Birdseye, of New York city, as assignee of the Baker & Clark named in said bond, or from Baker & Clark, and out of the moneys obtained from said assignee or from any person who may pay said drafts in behalf of said Baker & Clark, this bank shall first apply the same to the payment of said six drafts, and when said bank has fully paid said six drafts, interest, cost and protest fees, then this bank shall surrender up said bond, and after said bank shall have received its pay in full on said six drafts, including interest, cost and protest fees, from said assignee, said Baker & Clark, or any person who may pay said bank on their behalf, then any surplus moneys, if any, which may have been paid by said Sloan on said bond shall be refunded to said Sloan. This paper not to extend the time of the payment of said bond, nor change the terms of said bond, and said Sloan shall be subrogated to all the rights of the said bank in and to said drafts, to the amount that he may pay on said drafts after said bank shall be finally paid.

" Dated _February_ 19th, 1887.

" SALT SPRINGS NATIONAL BANK,

" By A. A. HOWLETT,

" _President._"

It is averred in the plaintiff's complaint, after referring to the said bond, viz.: "The defendant then and there covenanted with the plaintiff, under his hand and seal, to pay to the plaintiff the sum of $5,000 within one year after the date thereof, to wit: *Within one year after the said* 19*th day of February*, 1887." It is averred also in the complaint that "on or about the 19th day of February, 1888, said sum of $5,000 became due and payable from the defendant to the plaintiff, and the plaintiff demanded payment of the same from the defendant, but the same was not paid, nor any part thereof." The complaint contains no allegation of the performance by the bank of the conditions mentioned in the bond, or that it exercised any diligence in respect to the collection of the debts held by it. In the answer it is alleged "that plaintiffs pledged themselves to use the greatest efforts to collect said drafts, and all of them, from the acceptors, and that * * * the sum of $500.00 was then and there paid to plaintiffs to pay their expenses in making the necessary effort to collect said drafts from the acceptors, and this defendant, upon such statements and in consideration therefor, and because of the same, and not otherwise, executed and delivered to plaintiff his bond in writing." In further answering the defendant alleges: "That, having obtained his bond as set forth above, the plaintiff has ever since failed and neglected and refused to do anything toward the collection or enforcement of said drafts in question, from or against the said acceptors, or their funds or assignee, as defendant is informed and believes, and has failed to use due diligence to collect the same as agreed, and has failed in all points to do and perform its duties as set forth in said bond and agreement; and has, as defendant is informed and believes, failed to even put said drafts into judgment; and has failed to examine into the affairs of said acceptors, Baker & Clark, or of their assignee; and has, as defendant is informed and believes, remained quiet and inert and permitted the estate to be dissipated, and has not collected any part of said drafts whatsoever, nor made any effort, nor used due diligence, to do the same." When the plaintiff rested the defendant moved for a nonsuit upon the following grounds:

"*First.* Because the plaintiff has failed to prove facts sufficient to constitute a cause of action:

"(*a.*) By not showing execution issued against the principal debtors and returned before suit brought.

"(*b.*) By showing the execution was not issued until the year limited by the bond had expired.

"(*c.*) By showing one draft was never sued.

"(*d.*) By voluntarily giving Baker & Clark time to answer to the complaint.

"*Second.* Because the plaintiff has been guilty of laches in not pushing the drafts to judgment and issuing execution thereon.

"*Third.* Because the plaintiff has failed to show 'due diligence' the condition precedent expressed in the bond."

The court reserved the question until the close of the evidence. When the evidence was closed the motion was renewed upon the same grounds as stated at the close of the plaintiff's case. It was then conceded that this action was commenced on the 17th day of March, 1888. Before the motion was decided the plaintiff asked the court " upon the facts in the case to direct a verdict in behalf of the plaintiff." Thereupon the court observed, viz.: " I don't think I can nonsuit in this case." To that ruling the defendant took an exception. Thereupon the court observed: " I will order a verdict for the plaintiff." Thereupon the defendant took an exception. The defendant's counsel observed: " I ask to go to the jury. Denied ; exception for defendant."

The court thereupon ordered a verdict for the plaintiff for $5,501.67. From the judgment entered upon that verdict this appeal was taken.

*E. B. Powell* and *F. E. Hamilton,* for the appellant.

*Frank H. Hiscock,* for the respondent.

HARDIN, P. J.:

February 19, 1887, plaintiff held drafts under discount drawn by Austen & Co., of Oswego, upon Baker & Clark of New York city, which had been accepted and grown overdue, and the defendant on that day delivered to the plaintiff his bond conditioned to pay up to the sum of $5,000 of said debt, providing the plaintiff should use due diligence to collect the same of the acceptors or their

assignee. A claim was filed with the assignee by the plaintiff. Plaintiff took no proceedings against the assignee, and in no manner sought to coerce the final settlement of his accounts. No such final settlement has been had. Plaintiff brought suit against Baker & Clark upon five of the six drafts and obtained personal service on the —— day of August on one of the defendants, and on the 7th of September, 1887, upon the other defendant. In that suit judgment was not taken and entered until the 4th day of January, 1888. An execution was issued on the 17th day of February, 1888, but the same had not been returned when the action was brought on the 17th day of March, 1888; it was returned, however, *nulla bona* on the 12th day of April, 1888. The answer of the defendant sufficiently alleges the negligence, laches and failure of the plaintiff to use diligence in collecting the debt held by it mentioned in the bond executed by the defendant. When he delivered the bond he became a surety, a guarantor of the collection of the debt, or so much thereof as mentioned in the bond. Reading the bond in the light of the surrounding circumstances, and construing the same with the receipt or agreement made by the plaintiff when it took the bond (*Evansville Nat. Bank* v. *Kauffmann*, 93 N. Y., 273), we are of the opinion that the defendant stipulated, as a condition precedent to his promise to pay, that the plaintiff should use due diligence to collect the debt of the acceptors and their assignee. When *Griffith* v. *Robertson* (15 Hun, 344) was before this court attention was given to an instrument containing a guaranty of collection, and speaking for the court in that case, I said: "We think the instrument executed by the defendant Robertson must be construed and held to be a guaranty of collection. In such a guaranty it is a condition precedent that the creditor shall diligently endeavor to collect the amount of the principal debtor, by exhausting the ordinary legal remedies for that purpose, and a failure to do so works a discharge of the guarantor." This doctrine was laid down by TALCOTT, J., in *Northern Insurance Company of New York* v. *Wright* (13 Hun, 168; S. C., affirmed, 76 N. Y., 445), and cases sustaining the doctrine are cited. (*Kieys* v. *Tifft*, 1 Cow., 98; *Craig* v. *Parkis*, 40 N. Y., 181; *Moakley* v. *Riggs*, 19 Johns., 69; *Loveland* v. *Shepard*, 2 Hill, 139.) In delivering the opinion of the Court of

Appeals in *Northern Insurance Company of New York* v. *Wright,* affirming the same case in 13 Hun, 166, CHURCH, Ch. J., said: " The law is well settled in this State that such a guaranty is an undertaking to pay the sum secured by the obligation guaranteed, *provided the principal is prosecuted to judgment and execution with due diligence,* and the same cannot be collected of him. Due diligence in exhausting the legal remedies against the principal is a condition precedent to any liability against the guarantor. Nor will proof of insolvency or inability to pay on the part of the principal avail as a substitute for a failure to pursue the legal remedies. (*Craig* v. *Parkis,* 40 N. Y., 181.) It follows that this condition is a part of the contract, and must   shown to have been performed, as a demand and protest of a note must be shown in order to fix the liability of an indorser." The case from which we have just quoted was decided in 1879. It was referred to and followed by this court in *Tiffany* v. *Willis* (30 Hun, 266), decided in 1883. The same doctrine is reiterated by the Court of Appeals in *Schmitz* v. *Langhaar* (88 N. Y., 506), viz. : " In such a case the law in this State construes the obligation as an undertaking, that the demand is collectible by due course of law, and the guarantor bound to pay the sum specified in the original contract, ' provided the principal is prosecuted to judgment and execution with due diligence, and the same cannot be collected of him.' (*Craig* v. *Parkis,* 40 N. Y., 181.) We have come to regard these proceedings, and the return of the proper officer that the writ cannot be enforced, as the best evidence that the method of procedure prescribed by law for the collection of debts has been followed and of the debtor's inability to pay." In the case from which we have just quoted the guaranty was of the collection of a claim against a deceased party, and the court took occasion to point out the difference between this case and that of a guaranty of the collection of a claim against a living debtor, and probably the doctrine of that case is sufficient to warrant us in supposing the diligence due from the plaintiff, so far as the assignee of Baker & Clark was concerned, was evidenced by a presentment of the claim to the assignee, but we find nothing in that case which absolves the plaintiff from exercising due diligence against Baker & Clark, the acceptors. A non-

performance of the duty of the plaintiff to prosecute to judgment and execution, and a return thereof of the claim against the acceptors cannot be excused by showing that the debtors were insolvent and that, apparently or probably, nothing would have been obtained from them by means of a judgment and execution. (*Craig* v. *Parkis*, 40 N. Y., 181.) The diligence which the defendant exacted was required to be shown during the year mentioned in his bond. The plaintiff did not enter judgment as soon as the defendant's time to answer had expired in the action brought against the acceptors; on the contrary, it gave several stipulations extending the time to answer and postponing its right to enter up judgment. It appears that the extensions voluntarily given by the plaintiff allowed ninety-nine days more time to the debtors to answer than by due process of law they were entitled to. When this action was brought the plaintiff had not used or exhibited that diligence required by the conditions of the bond executed by the defendant, therefore its right of recovery did not exist according to the terms of the defendant's contract. As we have already observed, defendant was entitled, as he was a surety, to have the exact terms of his bond complied with before he was called upon under the terms of the bond for a fulfillment of the promise on his part in respect to the payment of the sum of $5,000 stated in the bond. There is nothing in the evidence indicating any waiver of the terms of the bond. To make out such waiver there must be clear and convincing evidence. (*Northern Ins. Co. of New York* v. *Wright*, 13 Hun, 168; S. C., affirmed 76 N. Y., 445.) On the contrary, we think the plaintiff's attorney or agent was, from time to time, notified that the defendant would not pay unless plaintiff used due and legal diligence. Clear intimations to that effect were given.

We are of the opinion that the evidence offered by the plaintiff, when read with the evidence offered by the defendant, did not establish that the plaintiff had used due diligence " within the time limited in the bond," and that the laches and negligence of the plaintiff appearing in the case were such that the trial court ought not to have held, as matter of law, that plaintiff was free from negligence and laches and had fully complied with the tenor and terms of the bond executed by the defendant. We think it was error to direct a verdict in favor of the plaintiff. (*Thomas* v. *Woods*,

4 Cowen, 173; *Backus* v. *Shipherd*, 11 Wend., 634.) We think a new trial should be ordered.

MARTIN and MERWIN, JJ., concurred.

Judgment reversed on the exceptions and a new trial ordered, with costs to abide the event.