## NEW YORK COMMON PLEAS.

GEORGE W. WILLIAMS agt. ALEXANDER HOLLAND, Treasurer of the American Express Company.

Where an express company or common carrier carries a box of merchandize delivered to it for transportation to the place of destination, and there tenders it to the consignee who refuses to receive it, the liability of the company or carrier is discharged by placing the box *upon storage with a responsible warehouseman*.

Under such circumstances the *warehouseman* becomes the bailee or agent of the owner in respect to it.

Where the premises in which such goods are stored are broken into by robbers, and the box and its contents feloniously taken, the warehouseman is not liable for the loss.

Whether the carrier is bound to notify the owner of the goods of this storage, *quere?*

When the owner does not at the time a package is left with the carrier for transportation, disclose his name and residence, there is no negligence on the part of the carrier in not giving notice of the storage.

In an action against a carrier for negligence, the *onus* of showing negligence is upon the plaintiff, and when he fails to prove it he cannot maintain the action.

*General Term, November,* 1861.

*Present,* DALY, BRADY and HILTON, *Judges.*

ON the 8th day of April, 1858, there was delivered to the *American Express Company,* a box of goods for transportation, marked " J. H. Scott, Lyons, Iowa," for which the company gave a receipt, expressing their undertaking to forward and deliver the articles.

The receipt does not disclose the name of the shipper or owner of the package. There was a charge upon the package of $167, which was to be paid by the consignee on the delivery of the box to him. The package was duly forwarded by the Express Company to Lyons, the place of its destination, and *was there tendered to the consignee* in good order, who refused to receive the box or pay the charges. Whereupon the box was stored in the care of *responsible parties* at Lyons, with whom the company was in the habit of storing goods. Within a short time after such storage, the premises upon which the *box was stored were entered by robbers,* and the box and contents *feloniously* taken away. The contents of the box was a " kit of gambling tools."

This action was brought by the plaintiff on the ground of the alleged neglect and refusal of the company to deliver the box or to return the same to the plaintiff. The court below rendered judgment in favor of the defendant, whereupon the plaintiff appealed to this court.

HENRY A. GRISWOLD, *for appellant.*

I. The business of the American Express Company is that of *common carriers.* They " *forward goods subject to purchase or other charges, and collect the same on delivery,*" throughout the different states, including the state of Iowa, the place where the goods in question were sent.

Being common carriers, they are liable as such until the full and complete performance of their contract. (*Russell* agt. *Livingston & Wells,* 19 *Barb.,* 346 ; *Sherman* agt. *Wells,*

*Gen. Term Sup. Court, Sept. '58,* Davies, J. ; *Door & others* agt. *N. J. Steam Nav. Co.,* 1 *Ker.,* 485 ; *Kemp* agt. *Coughtry,* 11 *John.,* 107.)

II. A common carrier cannot limit his responsibility by *notice;* a *special agreement* to that effect, between the parties, is necessary. (*Door and others* agt. *N. J. Steam Nav. Co., cited.*)

III. Even though the company could limit their responsibility to that of warehousemen, and supposing they have done so by their bill of lading or receipt, or are to be regarded as such by the law, still they are responsible in this case, on the ground of negligence.

IV. The gambling defence amounts to nothing.

It is not shown that the goods were tools and implements " *to be used for gambling,*" or were " *used only for gambling purposes;*" the contrary of this is established by the evidence.


Hooper C. Van Vorst, *for respondent.*


I. The American Express Company faithfully discharged its whole duty to the plaintiff under its agreement with him. The box was safely conveyed to the place of destination, and there tendered in good order to the consignee, who refused to take it. It was then stored in the care of " *good and responsible* parties." (*Angell on Com. Carriers,* § 291.)

II. Where goods are safely conveyed to the place of destination, and the consignee is dead, absent, *or refuses to receive them,* the carrier may discharge himself from further responsibility by placing the goods in store in the care of responsible parties. Then the risk of the carrier ceases, and the liability of the warehouseman commences. (*Fisk* agt. *Newton,* 1 *Denio,* 45 ; *Angell on Carriers,* § 295, *and cases cited.*)

(a.) Common carriers who pursue also the business of warehousemen, are subject to the strict responsibility of

*carriers* only while the goods conveyed by them are "*in transitu.*" When the goods are placed in their warehouse they are simply liable as warehousemen. (*Angell on Carriers*, §§ 79, 302; *Story on Bailments*, §§ 446, 449.)

(b.) When the consignee of goods refuses to receive them, the carrier may hold them as a warehouseman for the owner, or lodge them with suitable persons for him; and such persons then become bailees of the owners of the goods. (1 *Parsons on Cont.*, 659; *Ostrander* agt. *Brown*, 15 *John.*, 39; *Angell on Carriers*, §§ 291, 295.)

(c.) No authority can be found making it a duty of the carrier to notify the consignor that the goods have been stored.

*If it is a duty thus to notify, the presumption is that it was done.*

Plaintiff, though sworn as a witness, does not say that he failed to receive notice that the goods *were stored.* It clearly was *his duty* to call at the express office and inquire about his goods. If he did not, he is himself guilty of great *negligence.* He does not say that he called and inquired, and failed to learn what had become of his goods. The fair presumption is, from the facts, that he knew the goods were stored.

The plaintiff in this case, when he left the box, neither gave his name nor residence.

III. A warehouseman is not liable for losses by fire or burglars in cases where no gross negligence, fraud or connivance can be imputed to him or his servants. He is liable only for ordinary diligence. (1 *Parsons on Cont.*, 617; *Platt* agt. *Hibbard*, 7 *Cow.*, 497; *Knapp* agt. *Curtis*, 9 *Wend.*, 60; *Foote* agt. *Storrs*, 2 *Barb.*, 326.)

IV. The American Express Company are "express forwarders," and not *common carriers;* and the receipt given to plaintiff restricts their liability to that of *forwarders* only. (1 *Parsons on Cont.*, 703, *and cases cited.*)

V. The box in question contained a "kit of gambling

implements," which being liable to confiscation, it is against the policy of the law to regard as being of any " actionable value." (2 *R. S.*, *pp.* 74, 75, 4*th ed.*, *particularly* §§ 23, 24.)

By the court, DALY, F. J. The defendants carried the box to the place of destination, and tendered it to the consignee, who refused to receive it. It was then safely stored by the defendants in the premises in which they were accustomed to store merchandize in the care of good and responsible parties; and while thus upon storage the premises were broken into by robbers and the box and its contents feloniously taken.

The consignee having refused to receive the box, the defendants discharged their contract as carriers, by placing it upon storage, and the warehouseman became thereafter the bailee and agent of the plaintiff in respect to it. (*Fisk* agt. *Newton*, 1 *Denio*, 45; *Ostrander* agt. *Brown*, 15 *John.*, 39; *Cairnts* agt. *Robbins*, 8 *Mees. & Wels.*, 258.) As the property was taken feloniously, the warehouseman was not answerable for the loss. (*Schmidt* agt. *Blood*, 9 *Wend.*, 268.) But it is claimed that the defendants are liable, because they did not notify the plaintiff within a reasonable time of the refusal of the consignee, and that they had stored the box with a warehouseman. But it did not appear from anything in the case that the defendants knew who was the owner; and unless they did, they could not be expected to notify him of what they had done; or if they did know, it may have been, for all that appears in the case, that he was duly notified. The name of the owner was not inserted in the printed receipt given by the defendants. The space in which the consignor's name is usually inserted, was left blank, and the address of the consignee, or person to whom the box was to be delivered, was the only thing contained in the receipt to indicate to whom the property belonged. Under such circumstances there could

be no presumption that the defendants knew that the box belonged to the plaintiff, and that they failed to notify him.

It rested with the plaintiff to make out a case of negligence, and all that was necessary to show it, was incumbent upon him to prove. He was himself examined as a witness, and if he had communicated his name and address to the defendants when the box was left with them for transportation, he could have proved it. He did not do so ; and if any conclusion is to be drawn, it is that the defendants had no knowledge of the owner until after the box was feloniously taken from the warehouse.

As the contents of the box was " a kit of articles or implements for gambling," there may have been very good reasons for concealing the name of the person in the state to whom it belonged. (2 *R. S.*, 927, § 25, *5th ed.*)

It is sufficient, in conclusion, to say, that the *onus* of showing that the box was lost by the defendants' negligence, was upon the plaintiff, and that he failed to show anything of the kind.

The judgment should be affirmed.